DE CREMER v. ANDERSON.

CONTRACT OF GUARANTY — NOTICE OF ACCEPTANCE — WHEN RE-
QUIRED.

Notice of acceptance is essential to bind as guarantors persons
who, in response to the request of the principal, sign a guar-
anty for the payment of goods to be sold him on credit, where
the offer of the guarantee to sell the goods was conditional
upon his approval of the guarantors

Error to Marquette; Stone, J. Submitted April 16,
1897. Decided July 13, 1897.

*Assumpsit* by Florian De Cremer against William F.
Anderson and Abraham Boulsom upon an alleged con-
tract of guaranty. From a judgment for defendants on
verdict directed by the court, plaintiff brings error.
Affirmed.

*J. M. Edgerton* (*Clark & Pearl*, of counsel), for ap-
pellant.

*McClear & Bell*, for appellee Anderson.

*Ball & Ball*, for appellee Boulsom.

MOORE, J. Julius Jacobson desired to buy goods of the
plaintiff. The plaintiff sent him a blank paper reading as
follows:

"For the purpose of enabling Julius Jacobson to pur-
chase goods upon credit from F. De Cremer, of Green
Bay, Wis., we hereby guarantee that said Julius Jacobson
shall promptly pay him for all goods which he may here-
after sell to him upon credit, until this guaranty is re-
voked; said payment to be made within 10 days after
receiving goods. Our liability hereunder shall cover any
balance to become due, not exceeding $300."

This was afterwards dated May 2, 1894, and signed by
defendants. When this paper was sent to Jacobson, he

was instructed to have it signed by responsible parties, and if plaintiff, upon investigation, was satisfied of their responsibility, he was to forward the goods. This guaranty was delivered to Jacobson, and by him delivered to the plaintiff. The plaintiff caused an investigation of the responsibility of the defendants to be made, and notified Jacobson that he was satisfied with the guaranty, but did not notify the defendants. The plaintiff sold goods to Jacobson under the guaranty. May 8, 1895, Boulsom notified the plaintiff that he withdrew from the bond. This notification was in writing, and it was forwarded in a letter written by Mr. Edgerton, who was then acting as attorney for Boulsom. On the 14th of May the plaintiff wrote Mr. Edgerton, saying:

"Yours, with letter of A. Boulsom, received. Bond security of his on J. Jacobson will hold good on all transactions of Jacobson's before bond is withdrawn. Same will be noted."

Edgerton handed this letter to Boulsom upon its receipt. At this time there was due the plaintiff the sum of $207.24. Plaintiff did not notify defendants of this amount until some time in October, when suit was brought to recover this balance.

It is claimed by the defense: *First*, that defendants were never notified by plaintiff that he accepted them as guarantors; *second*, that the balance of $207.24 was paid by subsequent payments made by Jacobson; *third*, that the defendants were not notified in reasonable time of the default of Jacobson.

The circuit judge held that the defendants were entitled to notice of their acceptance as guarantors, before the plaintiff could hold them liable. In support of his contention that the court erred in taking the case from the jury, the appellant relies upon *Farmers', etc., Bank* v. *Kercheval*, 2 Mich. 504, and *Roberts* v. *Hawkins*, 70 Mich. 566, and also cites a number of authorities from other States. All of these have been examined, but we shall refer only to the Michigan cases. In both the Mich-

igan cases the guaranty was delivered by the guarantor directly to the party extending the credit. In the former case the guaranty was in the form of a bond under seal, in which the amount of the liability and the time it was to run were stated, and it was accepted by the bank on its delivery. In the case of *Roberts* v. *Hawkins, supra,* the obligation was the guaranty of the payment of a note, indorsed on the back of the note itself, which note was payable to the plaintiff, and was delivered to her for the express purpose of procuring from her the $1,000, which she paid upon its delivery to her. The guaranty of payment was part of the contract which induced her to part with her money at the time the contract was made. The undertaking of the defendants was quite different from that of the defendant in either of the above-cited cases.

In *Davis Sewing Machine Co.* v. *Richards,* 115 U. S. 524, the rule is stated by Justice Gray, as follows:

"A contract of guaranty, like every other contract, can only be made by the mutual assent of the parties. If the guaranty is signed by the guarantor at the request of the other party, or if the latter's agreement to accept is contemporaneous with the guaranty, or if the receipt from him of a valuable consideration, however small, is acknowledged in the guaranty, the mutual assent is proved, and the delivery of the guaranty to him or for his use completes the contract. But if the guaranty is signed by the guarantor without any previous request of the other party, and in his absence, for no consideration moving between them except future advances to be made to the principal debtor, the guaranty is, in legal effect, an offer or proposal on the part of the guarantor, needing an acceptance by the other party to complete the contract." 9 Am. & Eng. Enc. Law, 78.

A standard text writer has said:

"A question often arising upon commercial guaranties is whether, in order to charge the guarantor, it is necessary that he be notified of the acceptance of the guaranty by the person acting upon it. When the guaranty is a letter of credit, or is an offer to become responsible for a credit

which may or may not be given to another, at the option of the party to whom the application for credit is made, the great weight of authority is that the guarantor must, within a reasonable time, be notified of the acceptance of the guaranty. The most satisfactory reasons exist for these decisions. It is of the highest importance to the person thus offering his credit that he should know he is to be looked to for payment. Knowing that fact, he can regulate his dealings with his principal accordingly. He will have an opportunity to secure himself and guard against loss. Concerning this subject it has been said: ' It would, indeed, be an extraordinary departure from that exactness and precision which peculiarly distinguish commercial transactions, which is an important principle in the law and usage of merchants, if a merchant should act on a letter of this character, and hold the writer responsible without giving notice to him that he had acted on it.' Another reason much relied upon by the courts is that the transaction only amounts to an offer to guarantee until the party making the offer is notified of its acceptance, when the minds of the parties meet and the contract is completed." Brandt, Sur. § 186; *Craft* v. *Isham*, 13 Conn. 28; *Winnebago Paper Mills* v. *Travis*, 56 Minn. 480; *Gardner* v. *Lloyd*, 110 Pa. St. 278.

In the case at bar, the guaranty was not signed by the guarantors at the request of the plaintiff. No consideration passed from the plaintiff to the guarantors, or was acknowledged in the guaranty. It was not accepted by the plaintiff at the time it was given, and he did not agree to accept it until he had satisfied himself of the responsibility of the guarantors, which he proceeded to do some days afterwards by correspondence with the register of deeds. Under such circumstances the guarantors were entitled to know that their guaranty had been accepted, before they were bound.

Judgment is affirmed.

The other Justices concurred.